UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RAYSHAWN J CHRISTMAS #433850          CIVIL ACTION NO. 19-cv-0629

VERSUS                                JUDGE DOUGHTY

JEFF JACKSON ET AL                    MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Rayshawn J. Christmas ("Plaintiff"), who is self-represented, is a convicted inmate housed at the David Wade Correctional Center ("DWCC"). He filed this civil rights action against six defendants based on allegations that they did not provide proper medical care for priapism that he experienced several times in the summer of 2018. Those defendants are Dr. Pamela Hearn, Dr. Gregory Seal, Nurse Lavecya Hamilton, Nurse Jeff Jackson, Captain Alma Burns, and Sgt. Corey Reed.

Defendants filed a motion for summary judgment (Doc. 54) that challenges the claims on the merits and asserts the defense of qualified immunity. The motion was noticed for briefing, but Plaintiff did not file a response. For the reasons that follow, it is recommended that the motion be granted and all claims be dismissed.

**Plaintiff's Allegations**

Dr. Gregory Seal is a contract physician who provides care to inmates at DWCC. Plaintiff alleges that Dr. Seal prescribed him Trazodone (an anti-depressant) even though he knew or should have known that the side effects of Trazodone include the potential to

cause priapism, which is an unwanted, persistent, and painful erection that may occur spontaneously or after taking certain medications. Plaintiff alleges that he awoke on May 17, 2018 in agonizing pain from priapism. He made an emergency sick call, but he was forced to wait five hours in the infirmary before he saw a nurse, who afforded him no treatment and refused to send him to the hospital.

A similar incident allegedly occurred on June 21, 2018, after which Plaintiff was seen by Nurse Lavecya Hamilton, who gave him aspirin that did not alleviate his pain. Plaintiff alleges that he again awoke in pain on July 3, 2018 and, after several hours of waiting, Nurse Jeff Jackson examined him and called Dr. Pamela Hearn, a physician who then served as the prison medical director. Dr. Hearn allegedly instructed the nurse to have Plaintiff walk up and down some stairs and use an ice pack. Plaintiff claims that neither measure stopped his pain.

The next incident was on July 3, 2018. Plaintiff alleges that Dr. Hearn directed Nurse Jackson to give him a shot, which did not help, and Dr. Hearn sent Plaintiff to the hospital. Plaintiff alleges that the physician at the hospital asked why prison officials had delayed sending him there, and he used a needle to drain the blood. Plaintiff alleges that the physician told him that he was sending paperwork to DWCC officials instructing the medical staff to take Plaintiff to the hospital if his priapism lasted more than four hours. He also scheduled Plaintiff an appointment with a specialist.

Plaintiff alleges that he awoke in pain about a dozen more time between the hospital visit and his August 31, 2018 appointment with a specialist. He describes each of the intervening incidents in detail and alleges that he was required to wait several hours, after

which he was usually afforded little or no treatment. He contends that on one day, July 13, Sgt. Corey Reed deliberately ignored his request for an emergency sick call three times. He contends that Captain Alma Burns came to his cell that day to take him to disciplinary court, ignored his medical complaints, and took him to disciplinary court despite his pain and pleas for medical assistance.

Plaintiff alleges that the specialist, whom he saw on August 31, 2018, told him that his problem was caused by the Trazodone. The physician said she was going to send a recommendation to prison staff to discontinue the prescription. Plaintiff alleges that prison staff disagreed with the recommendation and continued to provide Trazodone, although a nurse told him that he could refuse the medication. He alleges that Dr. Seal did not change his medication until October 4, 2018, more than 30 days after the specialist recommended discontinuance of Trazodone. Plaintiff admits, however, that he stopped taking the medication after the August 31 visit to the specialist and had no problems after that.

**Summary Judgment**

Defendants challenge Plaintiff's allegations with summary judgment evidence. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).  If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Defendants' Summary Judgment Evidence**

Defendants' motion is supported by a certified copy of Plaintiff's medical records and several declarations made under penalty of perjury, which are competent summary judgment evidence.  28 U.S.C. § 1746.  Dr. Gregory Seal states in his declaration that, prior to prescribing Trazodone, he met with Plaintiff to review the medication, its purpose, and its potential side effects.  He discussed with Plaintiff that priapism is a rare, but possible, side effect of Trazodone.  He told Plaintiff that he should contact prison medical staff immediately if he experienced priapism.  Plaintiff said that, despite the possible side effects, he wanted to be prescribed the drug, and Plaintiff signed an informed consent for the prescription.  A copy of that signed form is in the medical records submitted by Defendants.

Dr. Seal states that he was not aware of Plaintiff experiencing any episodes of priapism until October 4, 2018, at which point he discontinued the medication, but it appeared that the medication had already been discontinued from the pill cart.  He explains that any physician at DWCC may discontinue any medication.  Dr. Seal states that he did

not prescribe the drug with the intention to cause Plaintiff harm or that he experience any side effect.

Dr. Pamela Hearn, who was then the medical director at DWCC, testifies that the appropriate initial treatment of priapism is to apply ice to the affected area (for at least 30 minutes for full efficacy) and then have the patient exercise by performing activities such as walking or walking up and down steps. She notes that Plaintiff was sent to the emergency department at the hospital on July 3, 2018 with complaints of priapism, and a referral was made to send him for evaluation by a urologist. That examination happened on August 31, 2018, the urologist recommended the discontinuation of Trazodone, and the drug was discontinued after review of the recommendation. (Dr. Hearn does not state the exact date on which the drug was discontinued.)

Dr. Hearn also testifies about her involvement in complaints Plaintiff made on July 8 and 12, 2018. In the first instance, Plaintiff was provided an ice pack and ibuprofen, which did not improve his symptoms. He was then instructed to walk up and down portable steps. Dr. Hearn reviewed the treatment provided and determined that no further action was necessary. Plaintiff was similarly provided an ice pack and instructed to walk after his complaint on July 12, and Dr. Hearn determined that no further action was necessary. She states that Plaintiff was given appropriate medical treatment in each instance where he completed a request for treatment between June 2018 and August 2018 regarding priapism.

Captain (now Major) Alma Burns and Sgt. Corey Reed offer testimony about how sick calls are made. They explain that offenders are provided healthcare request forms at 5:00 a.m. to be completed and picked up by 6:00 a.m. by corrections officers, who then

provide them to medical staff.  An offender may also make an emergency healthcare request at any time, which triggers a call to a supervisor, who then calls the infirmary or asks the key room to call the infirmary.  Major Burns testifies that he does not provide medical advice or make decisions related to "medical trips or emergency medical trips." He denies that he ever denied Plaintiff a healthcare request form or that he ever instructed a subordinate officer to do so.

Sgt. Reed specifically addresses Plaintiff's allegations about the morning of July 13 when Plaintiff was scheduled for disciplinary court.  He testifies that Plaintiff yelled from his cell several times, in quick succession, "I want a sick call!"  Reed called his supervisor, Major Burns, and told him that Plaintiff was making an emergency sick call.  Burns advised that Nurse Jackson was on his way to evaluate and treat Plaintiff.  Reed says that he spoke to Plaintiff prior to his appearance before the disciplinary board, and Plaintiff "appeared in no apparent distress."  He states that he did not deny Plaintiff access to a healthcare request.

Lavecya Hamilton, a registered nurse, testifies regarding her interactions with Plaintiff on a couple of occasions.  She states that Plaintiff completed a request form on June 21, and she evaluated him at approximately 8:00 a.m.  Plaintiff told her that he was in pain, but no longer erect, and she provided him with over-the-counter medication.  Nurse Hamilton saw Plaintiff again on July 9 at about 8:00 a.m. after he complained of an erection that lasted more than three hours.  She had him walk up and down portable steps and, after 30 minutes, he said the treatment worked.  She also provided ice and 600 mg of ibuprofen.

Plaintiff alleged in his complaint that Nurse Hamilton also saw him on July 12, but she denies evaluating him on that date.  Medical records show that someone saw Plaintiff

in the infirmary on July 12.  The screener's signature is not legible, but it does not match Nurse Hamilton's, which is clear and legible on the forms she signed.  Plaintiff was given an ice pack and told to walk continuously until the condition resolved.

Jeffrey Jackson, a licensed practical nurse, testifies that he evaluated and treated Plaintiff "on numerous occasions regarding his complaint of priapism."  When Jackson did so, he would call the physician on duty to confirm the course of treatment.  The treatment was ordinarily to apply ice and direct the patient to exercise on portable steps, which would resolve the issue within about 30 minutes.  Jackson states that if Plaintiff was not being treated in the infirmary, he would monitor Plaintiff by an in-cell camera to ensure that he was completing the prescribed treatment.

Plaintiff's medical records support the testimony by Defendants.  They document multiple occasions, including on July 13, when Plaintiff complained of pain and was treated with ice and "stepsercise" or walking.  The notes indicate that Plaintiff typically reported that the problem was resolved within 15 to 30 minutes.  On other occasions, Plaintiff reported that the erection had gone away by the time of the examination, and no treatment was needed.  The urologist wrote in her notes that Plaintiff told her that "if they bring a set of stairs to my cell and I walk them it goes down."  She recommended discontinuance of the Trazodone and, if an episode occurred, Plaintiff was instructed to engage in exercise such as pushups, jumping jacks, running in place, or running stairs.  She noted, "Patient aware of this and if exercised will mostly resolve."

**Analysis**

The Eighth Amendment rights of prisoners are violated when prison officials demonstrate deliberate indifference to serious medical needs, which constitutes an "unnecessary and wanton infliction of pain." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n. 12 (5th Cir. 2006). Deliberate indifference will be found only where the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S.Ct. 1970, 1984 (1994).

Defendants have met their summary judgment burden of presenting evidence that they provided a reasonable level of care that no reasonable jury could find rose to the level of deliberate indifference to a serious medical need. Each of Plaintiff's several complaints received a response from the medical staff, which often included ice and exercise, which both Dr. Hearn and the urologist say is the appropriate treatment. There is no evidence that any particular member of the staff ignored Plaintiff's complaints or that they were aware of the cause of the priapism.

Plaintiff suggests that Defendants should have correctly diagnosed the cause of his problems and resolved it sooner, but neither unsuccessful medical treatment, mere acts of negligence, nor medical malpractice give rise to deliberate indifference. Gobert, 463 F.3d at 346. Defendants afforded appropriate treatment, scheduled an appointment with a specialist when that treatment did not resolve the problem, and followed the instructions of

the specialist, which ended the episode.    The extensive treatment is reflected in the summary judgment materials, and "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Gobert, 463 F.3d at 346 n.24 (5th Cir. 2006).   That is the case here.  Each of the defendants is entitled to summary judgment on the merits, so the court need not address the qualified immunity defense.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 54) be granted and that all claims against all defendants be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. <u>See</u>

<u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of July,

2020.

Mark L. Hornsby
U.S. Magistrate Judge